OPINION
In this case, Joseph Wilson appeals from the trial court's dismissal of his petition for post-conviction relief. The pertinent factual background leading to the filing of Wilson's post-conviction petition is as follows. On December 18, 1991, Wilson was indicted on charges of abduction and attempting to cause or causing physical harm with a deadly weapon (a hammer) to Annie Binion. The record does not contain any facts about the incident other than those mentioned in the indictment. Although Wilson initially pled not guilty to the charges, he later entered a plea of guilty to attempting to cause harm with a deadly weapon. In exchange, the State dismissed the abduction charge. During the plea hearing, Wilson appeared in court with five other defendants, who were entering pleas in unrelated matters. At the time, Wilson was represented by J. Bernard Carter, whom Wilson had privately retained.
Certain issues were raised about Carter's representation in affidavits filed in support of the petition for post-conviction relief. According to these affidavits, Wilson called his ex-wife, Margie Wilson, from jail on January 10, 1992, and asked Margie to use her telephone's three-way calling capacity to call Carter. While all three individuals were on the phone that day, Carter said he had attended a pre-trial conference, and further said that the judge and prosecutor had agreed to grant probation to Wilson if Wilson pled guilty. Following this conversation, Wilson appeared in court on January 21, 1992, and pled guilty.
The transcript of the plea hearing indicates that the trial judge questioned Wilson on all matters mandated by Crim. R. 11. During the hearing, Wilson did not mention any promises made about sentencing, and answered in the negative when the court asked if anyone had promised him anything other than the plea agreement that had been recited into the record. The court did mention that Wilson was eligible for probation, but also stated that the crime in question carried with it a potential minimum sentence of three to eight years and a potential maximum sentence of fifteen years. Wilson said he understood the penalties. Sentencing was deferred, however, so that the probation department could do a pre-sentence investigation. At the time, Wilson was approximately 44 years of age and had no serious offenses since the age of eighteen.
Wilson and his ex-wife both said in their affidavits that after the plea hearing, Wilson called his ex-wife and told her that neither the prosecutor nor the court had said anything about probation during the hearing. Wilson said he felt his attorney had lied to him, and he asked his ex-wife to again call Carter using three-way calling. They were able to reach Carter by phone, and Wilson asked Carter during the conversation to withdraw his guilty plea. In response, Carter said he would not file such a motion, and repeated that Wilson was to be granted probation.
On January 31, 1992, Wilson appeared before the trial court for sentencing. The record is very brief and consists only of the court asking, before sentencing, if Carter or Wilson wished to say anything. After receiving negative responses, the court imposed a five to fifteen year sentence and informed Wilson of his appeal rights. The transcript is silent as to any reaction from Wilson to the sentence. According to Wilson, however, he immediately sent a letter of protest to the trial judge but received no response. He also promptly retained another attorney, Douglas Gregg, and paid Gregg $500.00 to file an appeal. Instead of filing an appeal, Gregg filed a motion on February 7, 1992, to withdraw the guilty plea. Attached to that motion is an affidavit from Wilson, stating that he had been told by his former attorney that if he pled guilty, he would receive probation.[1] The affidavit further states that Wilson had reconsidered his former plea and had asked his former attorney to withdraw the plea. Finally, the affidavit indicates that when Wilson appeared in court on January 31, 1992, he was unaware that his guilty plea had not been withdrawn, and thought he was appearing for the purpose of setting a trial date.
Without conducting a hearing, the trial court summarily overruled the motion to withdraw on June 2, 1992, and Wilson did not appeal. Wilson also did not appeal the original conviction and sentence. Subsequently, in September, 1992, Wilson met with another attorney, John Rion, who said he needed a retainer of $2,500.00 to persuade the trial court to grant shock probation. After receiving the retainer from Wilson's ex-wife, Rion filed a motion to suspend further execution of sentence on September 26, 1992. The State did not oppose this motion or even file a response. In the motion, Rion pointed out that Wilson had not committed any serious offenses since age eighteen, i.e., approximately 24 years previously. Rion also mentioned Wilson's potential for gainful employment in a family scrap hauling business and remorse for what had happened. However, the trial court summarily denied the motion on October 10, 1992. The court's four-line entry cited no specific reason for the denial, but simply overruled the motion after stating that the court had considered the original probation report and a post-sentence investigation for shock probation. Neither of the documents referred to by the trial court are part of the record. On January 30, 1993, the court allowed Rion to withdraw the motion to suspend sentence, without prejudice.
Approximately two years later, Rion filed another motion to suspend sentence. This time, Rion attached a certificate from the State Department of Rehabilitation and Correction, indicating that Wilson had completed interpersonal counseling. Additionally, Rion attached three work evaluations from the prison, which stated that Wilson was a good worker. The remainder of the motion raised the same points as the previous motion concerning Wilson's employability, remorse, and lack of serious offenses after age age 18. Again, the State did not file a response or objection to the motion for shock probation. However, the trial court once more summarily overruled the motion on June 5, 1995, in an entry identical to the court's previous entry. Furthermore, this entry did not refer to the additional documentation submitted by Wilson's attorney. Following the decision, the trial court signed yet another entry allowing Wilson to withdraw the motion to suspend sentence without prejudice to a new filing.
On May 5, 1996, Wilson filed a motion with the trial court, asking that a transcript be made of the arraignment, guilty plea, and sentencing. In this motion, Wilson said he was indigent and asked for the transcript to be made at public expense. This motion also was overruled summarily by the trial court. Subsequently, on August 29, 1996, Wilson filed a pro se motion to vacate or suspend his sentence. Wilson's petition for post-conviction relief was based on these claims: 1) that Wilson's plea of guilty was not knowingly or intelligently made due to a mistaken belief about the plea bargain; 2) that Wilson was denied effective assistance of trial counsel when his attorney refused to act to withdraw his guilty plea before sentencing, at a time when the possibility was not insubstantial that he would have been allowed to withdraw the plea; and 3) that Wilson was denied effective assistance of counsel when his attorney had an actual conflict of interest and was presumptively incapable of advancing his own ineffectiveness in support of a motion to withdraw the guilty plea. All of these issues raised matters outside the record and were supported by the affidavits of Wilson and his ex-wife, as previously mentioned.
The State filed a motion for summary judgment on October 9, 1996, and also filed proposed findings of facts and conclusions of law on January 24, 1997. Without holding a hearing, the trial court filed a decision granting summary judgment to the State on March 26, 1997. In its decision, the trial court used verbatim the proposed findings of facts and conclusions of law submitted by the State, including references to what was told to the Defendant at the sentencing hearing. However, at the time the trial court issued its decision, the transcript of the plea hearing and sentencing hearing had not yet been filed. Instead, the transcript was filed on May 27, 1997, after Wilson filed his notice of appeal with our court.
On appeal, Wilson raises the following five assignments of error:
 I. The trial court erred when it failed to issue meaningful findings of fact and conclusions of law in its judgment entry denying Appellant post-conviction relief.
 II. The trial court erred when it dismissed Appellant's petition for post-conviction relief without an evidentiary hearing where said petition was based upon matters and evidence dehors the record, and where the petition alleged facts which, if proved, would entitle the Appellant to relief.
 III. The trial court erred in granting the State's motion for summary judgment when there were "genuine issues of material fact" as to (1) whether defense counsel induced Appellant into pleading guilty based upon a promise of probation; (2) whether defense counsel refused to file a motion to withdraw Appellant's guilty plea prior to sentencing; and (3) whether defense counsel had a conflict with Appellant.
 IV. Appellant's plea of guilty was not knowingly nor voluntarily made due to an inducement by defense counsel that Appellant was to receive probation with that promise remaining unfulfilled; and also due to the trial court's failure to advise Appellant of the nature of the charges he was pleading to.
 V. Appellant was denied the effective assistance of counsel by defense counsel failing to move to withdraw Appellant's guilty plea prior to sentencing, by defense counsel's conflict of interest with Appellant, by counsel's misrepresentations concerning probation, and by counsel failing to advise or insure that the court advised Appellant with sufficient information concerning the elements of the alleged offense as applied to the facts of the case in order that Appellant could make an intelligent plea. After considering the record and applicable authority, we find merit in all five assignments of error and reverse the trial court's grant of summary judgment against Wilson. Our reasons for doing so are set forth below.
 I
In the first assignment of error, Wilson contends that the trial court erred in failing to issue meaningful findings of fact and conclusions of law. Wilson claims that the court improperly attacked the credibility of the affidavits, and used the attack as a basis for concluding that Wilson did not produce corroborating documents to demonstrate either that his guilty plea was not knowing or voluntary or that his trial counsel was constitutionally ineffective. Wilson's third assignment of errors focuses on the specific issues of fact raised by the affidavits, and presents the same argument for reversal. Therefore, we will consider the two assignments of error together.
With regard to the affidavits, Wilson points out that they raised matters outside the record and that there was nothing in the record to rebut the affidavits The crux of Wilson's argument is that the trial court ignored the affidavits, and we are inclined to agree. The court adopted the prosecution findings of fact and conclusions of law wholesale, when the transcript of the plea and sentencing hearings had not been filed. Rather than actually examining what happened at the plea and sentencing hearing, the court appears to have relied solely on the entry of waiver and plea on indictment and the termination entry (both pre-printed forms) to conclude that the record of compliance with Crim. R. 11 had "greater probative value than the conflicting affidavits of the Defendant and his ex-wife." Essentially, the trial court applied an irrebuttable presumption to the filing of certain printed forms, meaning that their content outweighed any possible evidence to the contrary, without the need to consider what that evidence might be. However, we cannot agree with such a presumption.
Of additional concern is the trial court's reference to materials not present in the record, as reflected by the following comment, on page 5 of the court's entry:
 Even after this Court told Defendant his sentence in this matter, and discussed his appellate rights, Defendant declined the opportunity to tell this Court that he wished to withdraw his Guilty plea because it was falsely induced by misrepresentations of his defense counsel.
Again, we question how the trial court could have known the defendant declined such an opportunity, when no transcript reflecting that fact was available at the time for review. If a presumption is to be adopted that no error is possible because a trial court routinely addresses certain matters in plea hearings and sentencing hearings, this is likewise not a presumption we are prepared to approve.[2]
For purposes of deciding if a post-conviction hearing should be granted, R.C. 2953.21 requires that the court evaluate whether substantive grounds for the petition exist. In order to make this assessment, the court must consider the petition and supporting affidavits, the court reporter's transcript, and all the files and records in the case. However, in State v. Kapper (1983), 5 Ohio St.3d 36, the Ohio Supreme Court imposed a limitation on a defendant's ability to obtain relief, by stating that
 a petition for post-conviction relief is subject to dismissal without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim. R. 11, indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises.
Id. at 38. Moreover, in assessing the weight of materials from the defendant, compliance with Crim. R. 11 has greater probative value than a signed statement. Id.
In Kapper, the defendant submitted only his own affidavit and no other supporting material. Subsequently, in State v. Strutton
(1988), 62 Ohio App.3d 248, we found an affidavit from the defendant's mother sufficient corroborative evidence for purposes of avoiding the rule in Kapper. We noted that the mother's corroboration of her son's complaint about his attorney established that the claim was made contemporaneously with the events and was not an afterthought, invented much later, to win a hearing. Likewise, in the present case, the affidavit from Wilson's ex-wife establishes that Wilson's claim about his attorney's conduct is not simply an afterthought. This case also presents somewhat stronger facts than Strutton, because Wilson's ex-wife actually was present during phone conversations with Wilson's attorney. By contrast, in Strutton, the defendant's mother simply heard the defendant complain about his attorney's refusal to file a motion to withdraw the guilty plea. Additional corroboration in the present case is found in the record itself, since a motion to withdraw the guilty plea was actually made by a separate attorney, who was retained by Wilson shortly after the guilty plea and sentence. Again, instead of conducting a hearing on the motion to withdraw, the trial court summarily overruled the motion without specifying the basis for its decision. Compare,State v. Xie (1991), 62 Ohio St.3d 521 (indicating defendant does not have absolute right to withdraw guilty plea before sentencing, but trial court must conduct hearing to decide if reasonable and legitimate basis exists for withdrawal), State v. Venters (Dec. 13, 1996), Greene App. No. 96 CA 58, unreported, (among factors to be considered in determining if trial court abused discretion in denying motion to withdraw is whether accused was offered a "complete and impartial hearing on the motion"); and State v.Nathan (1995), 99 Ohio App.3d 722 (post-sentence motion hearing is generally required if facts alleged by defendant would require court to allow withdrawal of plea).
For the reasons above, we find that sufficient factual issues existed to warrant a hearing on Wilson's post-conviction petition. As we noted in Strutton, the issue is not whether the defendant has proven his claim, but only whether enough evidence was before the trial court to justify a hearing. Id. at 252. Accordingly, the first and third assignments of error are meritorious, and are sustained.
Parenthetically, we also note that Wilson is entitled to representation by the public defender at the evidentiary hearing if the public defender concludes that the issues raised by Wilson have arguable merit. State v. Crowder (1991), 60 Ohio St.3d 151,153.
 II
In the second assignment of error, Wilson contends that the trial court erred in dismissing the petition without an evidentiary hearing where the petition was based on evidence dehors the record and alleged facts that, if established, would entitle him to relief. The fourth and fifth assignments of error are directed to the merits of Wilson's claims for post-conviction relief, i.e., the voluntariness of his plea, the failure of the trial court to advise Wilson of the nature of the specific charges, and the ineffective assistance of trial counsel. Because these three assignments of error raise interrelated matters, we will also consider them together.
As was mentioned above, Wilson's petition for post-conviction relief made three primary allegations, all based on matters outside the record: 1) that Wilson's plea of guilty was not knowingly or intelligently made due to a mistaken belief about the plea bargain; 2) that Wilson was denied effective assistance of trial counsel when his attorney refused to act to withdraw his guilty plea before sentencing, at a time when the possibility was not insubstantial that he would have been allowed to withdraw the plea; and 3) that Wilson was denied effective assistance of counsel when his attorney had an actual conflict of interest and was presumptively incapable of advancing his own ineffectiveness in support of a motion to withdraw the guilty plea. Without considering the merits of these allegations, we find that the evidence submitted by Wilson raised issues of fact on these claims and that the trial court erred in dismissing the petition without holding an evidentiary hearing.
Again, our previous decision in Strutton involved similar allegations. In that case, we noted that although a defendant is not automatically entitled to withdraw a guilty plea before sentencing, "a defendant is prejudicially denied effective assistance of counsel when his attorney fails to act on his request when the possibility that he would have been allowed to withdraw his plea is not insubstantial." 62 Ohio App.3d at 248
(citation omitted). As here, Strutton allegedly asked his attorney before sentencing to file a motion to withdraw the guilty plea, but the attorney refused. Because Strutton sought to make the motion before sentencing, when a motion to vacate should be freely allowed, we found the possibility not insubstantial that he would have been able to withdraw his plea. Since the present case involves similar circumstances, we see no logical basis for reaching a different conclusion.
We also note that Wilson filed a motion to supplement his post-conviction petition with an affidavit from his brother, Ronald Wilson, who testified that around the time of the plea, he drove Annie Binion, the alleged victim, to the police department. At that time, Binion told him she was withdrawing the complaint against Wilson because it was not true. Ronald Wilson also claims to have been contacted by a member of the police department, a Detective Engle, who said that the criminal charges had been withdrawn. Based on these facts, Wilson alleged further ineffectiveness on the part of his trial counsel in failing to inform him that the complainant had withdrawn the charges. The trial court did not rule on Wilson's motion to supplement, nor did the court appear to consider the affidavit when granting summary judgment against Wilson.
In State v. Swortcheck (1995), 101 Ohio App.3d 770, the defendant supported a motion for post-conviction relief with affidavits from witnesses who had heard the complaining witness say she had made up a rape claim to obtain revenge against the defendant. Id. at 772. In response, the State filed an affidavit from the defendant's attorney, who said he was never told about the witnesses. After the trial court granted summary judgment against the defendant, the court of appeals reversed and remanded for a hearing. Specifically, the court found the affidavits raised serious issues about the credibility of the victim, could possibly exonerate the defendant, and contained "sufficient operative facts showing substantive grounds for relief." Id.
Ronald Wilson's affidavit falls short of saying that his brother's attorney knew the charges had been dismissed, or should have been dismissed. However, this case has sufficient troubling aspects to warrant further explanation on this issue, particularly in view of the allegation that a police officer contacted Ronald Wilson and told him the charges were being dismissed. Assuming the officer has recollection of the matter, the allegation should be reasonably easy to verify or to disprove and cannot, for that reason, be automatically discounted as having been fabricated to win a hearing. At the least, we believe Wilson is entitled to offer evidence on this point.
Based on the preceding analysis, the second, third, and fifth assignments of error are sustained. Having sustained all of Appellant's assignments of error, we reverse the trial court's decision and remand for an evidentiary hearing on the post-conviction petition.
YOUNG, P.J., and GRADY, J., concur.
Copies mailed to:
Cheryl A. Ross
Joseph Wilson
Hon. John Kessler
[1] For some reason, the original motion in the trial court file does not have the affidavit attached. However, the State has attached an affidavit to its motion for summary judgment. This affidavit bears Wilson's name as affiant, is purportedly signed by Wilson, and is apparently typed on Gregg's office stationary. Since the affidavit is dated February 4, 1992, we assume, for purposes of this appeal, that the document is a copy of the one actually filed in the trial court.
[2] As was noted above, the transcript of the plea and sentencing hearings was filed after the trial court's dismissal of the post-conviction petition and indicates that Wilson's plea was taken along with the pleas in five other unrelated cases. Although we have previously found no abuse of discretion in the taking of mass pleas in unrelated cases, we also refused to specifically approve the practice. See, State v. Edmond (Jan. 23, 1989), Montgomery App. No. 11085, unreported, appeal dismissed for want of prosecution, 42 Ohio St.3d 70. In Edmond, we noted that although the proceedings in that situation had been conducted in "an exemplary manner," taking guilty pleas in unrelated cases could contribute to confusion. By contrast, the proceedings in the present case, while appearing to minimally meet Crim. R. 11 requirements, were also quite cursory.